[No. 1990.]

## MARTIN BOGER *v.* THE STATE.

ADULTERY — EVIDENCE. — Article 334 of the Penal Code prescribes one, but not the only, manner in which, in a trial for adultery, the State can prove the marriage of the accused, and that his wife is alive. His own admission that he is a married man, and that his wife still lives, is competent evidence against him.

APPEAL from the County Court of Titus. Tried below before the Hon. W. J. Johnson, County Judge.

The information in this case was joint against the appellant and one Ellen Davis, *alias* Ellen Boger. It charged them with the offense of adultery, in that they, each of them having a lawful surviving spouse, " did unlawfully live together, and have carnal intercourse with each other," from the 9th day of May, 1883, until the 12th day of October, 1883, in Titus county, Texas. The appellant, being alone upon his trial, was convicted and his punishment was affixed at a fine of $100. Appellant and Ellen Davis were both negroes.

K. Gaines, the father of Ellen Davis, *alias* Ellen Boger, testified for the State that the defendant and the said Ellen were married at his house, in Titus county, Texas, on the 14th day of May, 1883. The said Ellen had been previously married to one Jack Davis, who left her and the country some time in December, 1882; since which time the witness had seen nothing of the said Jack Davis. A short time before the marriage of the defendant and the said Ellen, the witness received a letter through the mail, which purported to have been written by one T. Hendricks, in Miller county, Arkansas. That letter informed the witness that the said Jack Davis had recently died in Miller county, Arkansas, and that the writer, the said T. Hendricks, had defrayed the funeral expenses of the said Davis. It contained also an appeal to the witness to reimburse him, the said Hendricks, in part, for the funds so paid out. Witness had never complied with that request. The letter described was read to the witness, who was illiterate and unable to read, by one Con Tierce, a white man. The said Ellen knew of the receipt of this letter, and its contents, prior to her marriage with the defendant. Witness was unable to say that the defendant knew of the receipt of that letter and the intelligence it conveyed. It was, however,

generally known and discussed in the neighborhood. Witness could not remember whether or not the envelope in which the letter was received was stamped and postmarked.

Roland Reed testified, for the State, that he saw the letter described by the witness Gaines, and heard Mr. Con Tierce read the same to Gaines. That letter stated in substance that Jack Davis was dead; that the purported writer, one T. Hendricks, had paid the expenses of his funeral, and that he wanted Gaines to reimburse him in part. The envelope was neither stamped nor postmarked, and bore no mark on the face other than Gaines's name. In the course of a conversation with the defendant a few days prior to the receipt of the said letter by the said Gaines, the defendant told the witness that A. J. Olive, the county attorney, had promised to write a letter to Gaines for him, to the effect that Jack Davis was dead, and that he was to pay the said Olive $3 for writing the said letter. Witness knew Jack Davis. He left Titus county in December, 1882; since when the witness had seen nothing of him. He heard once from him, in the spring of 1883. He was then on his way " out west." Witness was not friendly towards the defendant, but was not prejudiced against him.

Morgan Gordon testified, for the State, that he came with the defendant to Texas from Alabama, in 1882. On the way to Texas defendant told the witness that his wife refused to accompany him to Texas, and that he had left her in Alabama. Preacher Bryant, who testified that he also came to Texas with the defendant, deposed that the defendant made a similar statement to him.

Thomas Stinchcomb, a clerk in the dry goods store of Carr & Norris, in Mt. Pleasant, Texas, testified, for the State, that he had known the defendant since his arrival in Titus county in 1882. Defendant told the witness on one occasion that he had a wife in Alabama; that she refused to come to Texas with him, and that he left $700 in a bank subject to her order.

A. J. Olive testified, for the State, that, some time prior to the institution of this prosecution, and subsequent to the defendant's marriage with Ellen Davis, the defendant applied to him to write a letter for him to his son, who was in Alabama. Witness wrote, at the dictation of the defendant, in substance, that his son Tom, who had come with him to Texas, was not deporting himself properly. In the same letter as directed by the defendant, the witness wrote that his wife, Tom's mother, was to be informed that Tom's misconduct was her fault; that she had not raised him properly.

The State next proved the marriage of the defendant and Ellen

Davis by introducing in evidence the license and marriage certificate.

Allen Love testified, for the defense, that he came to Texas from Miller county, Arkansas, in January, 1885. He knew a negro man named Jack Davis, who worked for a man named T. Hendricks, in Miller county, Arkansas. Jack Davis told the witness that he went from Texas to Arkansas. He did not name the county in Texas from which he went. He died while in the service of Hendricks, and was buried by the said Hendricks. Witness saw the body buried. He did not know that that Jack Davis and the Jack Davis who was said to have married Ellen Gaines were the same or not.

J. H. Gamble testified, for the defense, in substance, that he came from Henry county, Alabama, to Titus county, Texas, in 1881. He knew the defendant in Henry county, Alabama, forming his acquaintance in 1870. If the defendant was ever married in Alabama, or had a wife there, the witness did not know it. Defendant was well to do in Alabama; owned a farm and worked several hands. One Snowball and wife occupied a house on that farm, and the defendant boarded with them, occupying a room by himself, and sleeping in bed by himself. When the defendant moved from Chambers county, Alabama, to Henry county in the same State, he brought several parties with him to work on his place, including a woman who went by the name of Mary Boger. That woman lived in a house to herself on the defendant's farm, and had her stock, etc., separate from that of others. There were three boys among the hands brought from Chambers to Henry county, by defendant, the youngest about twenty-one years old, and the oldest thirty years old, who were generally understood to be the offspring of the defendant and the said Mary Boger, but if defendant and the said Mary had ever been married the witness did not know it. He knew the defendant intimately in Alabama, and always regarded him as, and understood him to be, an unmarried man.

The question discussed in the opinion was raised by the motion for new trial.

*J. H. Harper* and *S. P. Paunders,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

HURT, JUDGE. This is a conviction for adultery. But one question is presented by the record for our solution: Does the proof show that, at the time of the acts of sexual intercourse with Ellen

Davis, Martin Boger was married to another woman and that she was then living?

It is urged by counsel for appellant that the proof of marriage can *only* be made in the manner stated in article 334, Penal Code. This proposition, we think, is unsound.   That the proof of marriage *may* be made "by the production of the original marriage license and return thereon, or a certified copy thereof, or by the testimony of any person who was present at such marriage, or who has known the husband and wife to live together as married persons," is certainly true, because it is thus provided by said article.   But, evidently, it was not intended by this article to exclude other legitimate means of making such proof.   For in bigamy (a felony) it is held in *Rex* v. *Newton*, 2 Moo. & Rob., 503, and *Rex* v. *Simmonds*, 1 C. & H., 164, "that the prisoner's admissions, deliberately made, of a prior marriage in a foreign country were sufficient evidence of such marriage, without proving it to have been celebrated according to the laws of the country where is said to have taken place." (Roscoe's Cr. Ev., 317.) If the former marriage can be proved by the admission of the prisoner, certainly the fact that his wife was living at the time of the adultery can be made in the same manner. (*Dumas* v. *State*, 14 Texas Ct. App., 464.)

The record informs us that appellant stated to Morgan Gordon, Preacher Bryant.and Thomas Stinchcomb that he had a wife in Alabama; "that she would not come with him to Texas." That after the pretended marriage with Ellen Davis, and just before this prosecution was instituted, appellant applied to A. J. Olive, the county attorney, to write a letter to his son, who was in Alabama.   Olive was by appellant directed to write in said letter, to his wife, "that she had not raised the boys right, or they would behave better;" which was accordingly done.

Now in this we find deliberate admissions to divers persons of a prior marriage in Alabama,— admissions deliberately made, not only of a prior marriage, but that his wife was living after the commencement of the adulterous intercourse with Ellen Davis.

We are of the opinion that the proof of marriage, as well as the fact that his wife was alive at the time of the adultery, was sufficient, and the judgment is therefore affirmed.

*Affirmed.*

[Opinion delivered October 24, 1885.]